(C. D. 299)

FRANK P. DOW CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 14, 1940)

*Lawrence & Tuttle* (*Charles F. Lawrence* and *George R. Tuttle* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Seattle, brought to recover certain customs duties

alleged to have been improperly exacted on a particular importation described on the invoice as "2 complete sets of corrugating rollers." Duty was levied thereon at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as parts of machines not specially provided for. It is claimed that said articles are properly dutiable at but 25 per centum ad valorem under the provision in said paragraph for parts of paper box machinery.

The plaintiff-corporation offered in evidence the testimony of its superintendent, Matthew Henry Munce. He testified that the business of his company was the making of corrugated shipping containers; that the rollers in question are cylindrical in form and are about 68 inches long and approximately 8 inches in diameter; and that the surface of such rollers is corrugated.

The witness then produced two pieces of paper the corrugations on which were made on said rollers and which were admitted in evidence as Illustrative Exhibit 1.

He then testified that articles like Illustrative Exhibit 1 are used to make wrappers for department stores; that the two rollers in question are part of a machine that makes boxes; that after the paper comes out from the rollers in corrugated form it is pasted with glue to a so-called paper liner which has a smooth surface; that another liner is then pasted on the other corrugated surface, a sample of which, over objection by counsel for the Government, was admitted in evidence as Illustrative Exhibit 2; that from articles like Illustrative Exhibit 2 boxes are made, a sample of which was admitted in evidence as Illustrative Exhibit 3.

The witness then testified as follows:

Q. Do you know the principal use of material made by this machine you refer to?—A. Yes, sir.

Q. What is that principal use?—A. To make shipping containers, corrugated shipping containers.

Q. Have you an opinion as to the proportion or the relative uses between Exhibit 1, and Ill. Exhibit 2? How does the use compare?—A. We have to make Exhibit 1 before we get to number 2.

Q. You make a finished article which you sell, similar to Exhibit 1; is that right?—A. Yes, sir.

Q. And you make a finished article, or you make a material like Exhibit 2 by the same machine?—A. Yes, sir.

Q. Now, to compare those two uses, making Exhibits 1 and 2, what is the relative proportion that you make of each?—A. About two percent.

Q. Two percent of which?—A. We make more of this than that.

Q. Two percent of Exhibit 1, and 98 percent of Exhibit 2?—A. Yes, sir.

Q. And will you just go one step further and tell us how you make boxes of merchandise like Exhibit 2? Is that on the same machine?—A. Yes, sir.

Q. So this machine that you have been talking about all the time—A. Yes, sir.

Q. For how many years back have you been using the machine containing rollers such as were imported here for the purposes you have described?—A. The same rollers?

Q. Same type.—A. Ten years.

Q. If you have seen these same type of rollers being used for the purposes you have told us in any other places other than your own plant, please tell us the locations and whatever the names of the manufacturers were, if you know them?—A. I have seen them down at Sumner.

Q. Where is that, in this state?—A. Yes, sir.

Q. Is that all?—A. Longview, Washington; Emeryville, California.

On cross-examination the witness testified in part as follows:

X Q. Now, is Exhibit 2 made on the same machine as Exhibit 1?—A. On part of it.

X Q. What do you mean, on part of it?—A. Well, there are two or three parts to the machine.

\* \* \* \* \* \* \*

X Q. And that machine makes articles similar to Ill. Exhibit 1, and also articles similar to Ill. Exhibit 2?—A. Yes, sir.

X Q. Are the two machines connected?—A. Yes, sir.

X Q. I mean, does material which goes into Exhibit 1, go into the machine which makes merchandise similar to Exhibit 1, stay in the same machine and become merchandise similar to Exhibit 2?—A. Yes, sir.

\* \* \* \* \* \* \*

X Q. How could you have testified on direct examination that 98 per cent of the merchandise that you make is similar to Ill. Exhibit 2 and only two per cent is similar to Ill. Exhibit 1?—A. Well, Exhibit 1 is used very little, just only in department stores for wrapping.

\* \* \* \* \* \* \*

X Q. Will the machine of which the rollers that were imported and are a part make paper boxes?—A. They start to make paper boxes.

\* \* \* \* \* \* \*

X Q. Will the machine of which these imported rollers are a part, make a paper box?—A. Complete?

X Q. Yes.—A. No.

\* \* \* \* \* \* \*

X Q. Do the machines of which the rollers are a part produce anything besides corrugated paper?—A. No, sir.

On redirect examination the witness testified in part as follows:

R. Q. You stated that there are two or three parts to the whole machine, in answer to Government counsel's question. Will you describe those parts to us, and how they operate?—A. Well, the one part with the corrugated rolls, that makes the corrugation paper. Another part we call the double-back or combiner. That puts on the other liner, and, therefore, when it gets up to the other end of the machine, it cuts it into sheets, and from there on it makes boxes.

\* \* \* \* \* \* \*

R. Q. \* \* \* You have got the paper or product in sheets. What do you do with it then? What is done to it?—A. It goes to other machines.

R. Q. Entirely separate and different machine than this you have been talking about?—A. Yes, sir.

R. Q. Located in a different part of your plant?—A. Yes, sir.

R. Q. You transport it there by hand or by trucks?—A. Yes, sir.

Upon this record we find the following facts:

1. That the corrugated rollers constituting the imported merchandise at bar are parts of a machine which corrugates paper and glues the same to so-called liners.

2. That if the liner is glued to one side of the corrugated paper the resulting product is used for wrapping merchandise.

3. That if the machine continues its operation and attaches a liner to both sides of the corrugated paper, the resulting product is exclusively used for the making of paper boxes by other machines adapted for that purpose.

4. That, of the entire output of the machines of which the imported rollers constitute parts, 98 per centum of the product is used in making paper boxes and 2 per centum for wrapping purposes.

Upon these facts, while it is true, as contended by counsel for the Government in his brief filed herein, that the rollers in question are not parts of a machine which itself makes paper boxes, nevertheless the machine of which the imported rollers are parts is unquestionably part of the machinery used in the manufacture of paper boxes.

We therefore hold as a matter of law that the rollers in question are parts of paper box machinery within the meaning of paragraph 372 of the Tariff Act of 1930, and as such are properly dutiable at the rate of 25 per centum ad valorem thereunder, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.